UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEA Z., | ) |
|     Plaintiff, | ) ) ) No. 24-cv-3333 |
|     v. | ) ) Magistrate Judge Keri L. Holleb Hotaling |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | ) ) ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lea Z.[1] appeals the decision of the Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 15) is GRANTED, and the Commissioner's motion for summary judgment (Dkt. 20) is DENIED.[2] The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.    BACKGROUND**

    **A.    Procedural History**

On November 2, 2021, Plaintiff, who was classified as a "younger individual" at the alleged onset date (but was "closely approaching advanced age" at the time of her hearing and "advanced age" now), *see* 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e), applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning February

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Plaintiff's filing (Dkt. 15) is styled a "Brief in Support of Reversing the Decision of the Commissioner" but filed as a "social security motion"; Defendant's filing (Dkt. 20) is styled its "Memorandum in Support of Motion for Summary Judgment." The Court construes each party's filing as a motion seeking summary judgment in that party's favor.

28, 2016. (Administrative Record ("R.") 16.) Following initial and reconsideration denials of Plaintiff's application (R. 16), an Administrative Law Judge ("ALJ") held an Administrative Hearing and issued a June 28, 2023 decision finding Plaintiff not disabled (R. 16-28). The Appeals Council denied review (R. 1-6), rendering the ALJ's decision the final decision of the Commissioner. Plaintiff appeals that decision. (Dkt. 1.)

### B. The ALJ's Decision

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled. (R. 16- 31); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act for DIB through June 30, 2021 and did not engage in substantial gainful activity after her alleged disability onset. (R. 18.) At step two, the ALJ identified severe impairments major depressive disorder; generalized anxiety disorder; and alcohol use disorder. (R. 19.) At step three, the ALJ concluded Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the SSA's listings of impairments under 20 C.F.R. 404, Subpart P, Appendix 1. (R. 19.) The ALJ evaluated Plaintiff's mental limitations using the four paragraph B criteria and found Plaintiff had a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19-20.)

Before step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels" with non-exertional limitations, including that Plaintiff could "sustain the attention and concentration to carry out and adapt to the mental demands of only simple, repetitive and routine work tasks and instructions[,]" "make only simple work related decisions[,]" and do no "work tasks involving exposure to [listed] extraordinary hazards" or "that require any interaction with the general public[,]" although she could "work in

proximity to coworkers" if there were no "joint or tandem work tasks." (R. 20.) At steps four and five, the ALJ concluded Plaintiff was unable to perform her past relevant work, but other jobs exist in sufficient numbers in the national economy that Plaintiff could perform, given her age, high school education, work experience, and RFC. (R. 27-28.) The ALJ therefore found Plaintiff was not disabled. (R. 28.)

### C. Standard of Review

Judicial review of the ALJ's factual determinations is confined to ensuring those findings are supported by substantial evidence. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023) (citation omitted); *see also* 42 U.S.C. § 405(g). ALJs "are subject to only the most minimal of articulation requirements," *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024), but nevertheless "must provide a logical bridge between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Martinez*, 71 F.4th at 1080 (cleaned up).

## II. ANALYSIS

The Court confines its analysis to Plaintiff's first argument—that the ALJ's RFC finding improperly contains no limitations on concentration, persistence and pace ("CPP")—because it is outcome determinative. "The ALJ's 'RFC assessment must incorporate all of the claimant's limitations supported by the medical record.'" *Morgan S. v. Dudek*, No. 22-cv-3116, 2025 WL 1158558, at *2 (N.D. Ill. Apr. 21, 2025) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019)). This includes limitations in mental areas, such as CPP. *Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014) (discussing whether ALJ sufficiently accounted for opined moderate limitation in CPP). Although CPP appears among the "broad areas of functioning" known as the paragraph B criteria the State Agency evaluators and ALJ use, the State Agency psychological evaluators' form, the "Mental Residual Functional Capacity Assessment" allows the evaluators to

3

provide additional information and explanations related to those criteria: "(1) a check-box type worksheet for the psychologist to [more specifically] assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's RFC." *Monday v. Comm'r of Soc. Sec.*, No. 4:23-CV-96, 2025 WL 865146, at *4 (N.D. Ind. Mar. 20, 2025) (citation omitted). Unless "the ALJ has reasonably relied upon the opinion of a medical expert who translates CPP findings into an RFC determination" or "the RFC adequately accounts for the claimant's demonstrated psychological symptoms," it is usually insufficient for an ALJ to accommodate a claimant's moderate CPP limitations with a catch-all restriction to "simple, routine work" or similar restrictions. *Maria R. v. Kijakazi*, No. 19-cv-8318, 2022 WL 16553139, at *4 (N.D. Ill. Oct. 31, 2022) (cleaned up); *see also Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("We have also made clear that in most cases employing terms like simple, repetitive tasks on their own will not necessarily exclude . . . those positions that present significant problems of [CPP], and thus, alone, are insufficient to present the claimant's limitations in this area.") (cleaned up); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (explaining that limitation "to simple, repetitive work does not necessarily address deficiencies of [CPP]").

And, even "if the ALJ relies on a [medical expert's] narrative translation of the claimant's CPP limitations to formulate an RFC, the ALJ must consider whether the consultants' narrative RFC assessment adequately encapsulates and translates the checklist" CPP limitations. *Morgan S.*, 2025 WL 1158558, at *2 (cleaned up). With exceptions generally hinging upon the specifics of a given case, courts have frequently found that narrative translations stating claimants can do simple and repetitive work do not adequately encapsulate and translate checklist CPP opinions that claimants were moderately limited in the abilities to concentrate for extended periods, complete the workday and workweek without interruptions from psychological symptoms, or work at a consistent pace without an unreasonable number of breaks. *See, e.g., id.* (citing *Pavlicek v. Saul*,

4

994 F.3d 777, 783 (7th Cir. 2021); *Monday*, 2025 WL 865146, at *6-8; *Cassie W. v. O'Malley*, No. 23-cv-14718, 2024 WL 4590809, at *3-4 (N.D. Ill. Oct. 28, 2024)); *but see Jose J. V. v. Dudek*, No. 22-cv-6216, 2025 WL 885714, at *4 (N.D. Ill. Mar. 21, 2025) (finding that ALJ properly relied upon evaluators' translation of moderate limits in CPP into mental "RFC for simple, *low stress*, and routine tasks") (emphasis added).

The Court accordingly assesses the State Agency evaluators' relevant opinions and the ALJ's RFC findings here. While Plaintiff's applications were under consideration, three State Agency psychological evaluators provided opinions regarding her mental capabilities and limitations.

First, a State Agency psychological evaluator for Plaintiff's DIB application at the initial level, Russell Taylor, Ph.D., opined Plaintiff had mild limitations in three paragraph B criteria (understanding, remembering, or applying information; interacting with others; and adapting or managing oneself) and a moderate limitation in the last paragraph B criterion (CCP). (R. 95.) The Court was unable to locate the checklist or narrative portions of Dr. Taylor's form for Plaintiff's limitations in Understanding and Memory. The checklist and narrative sections regarding Plaintiff's capabilities and limitations for Sustained Concentration and Persistence, however, appear twice, with different dates. (R. 99, 100.) The checklist components for the duplicated sections are similar but not identical; the narrative portions are the same. (R. 99, 100.) In the first of the two checklists, Dr. Taylor found Plaintiff was not significantly limited in most listed areas but was moderately limited in her abilities to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 99.) The second

5

iteration of the checklist finds Plaintiff not significantly limited in the third item listed above. (R. 100.) In Dr. Taylor's "expla[nations] in narrative form [of] the sustained concentration and persistence capabilities and/or limitations" of Plaintiff, he found Plaintiff "could understand, remember, concentrate and persist sufficiently . . . to carry out more than simple, routine task[s] but less than complex duties for a normal day period." (R. 99, 100.)

Second, a State Agency psychological evaluator for Plaintiff's SSI application at the initial level, Gayle Williamson, Psy.D., opined Plaintiff had no limitation in the paragraph B criterion of interacting with others; a mild limitation in the criterion of adapting or managing oneself; and moderate limitations in the last two paragraph B criteria of understanding, remembering, or applying information; and CCP. (R. 108.) In the checklist portion of her evaluation for Sustained Concentration and Persistence, Dr. Williamson opined Plaintiff was not significantly limited in most areas but was moderately limited in Nos. (1), (2), and (4) of the areas in which Dr. Taylor opined Plaintiff was moderately limited. In her narrative, Dr. Williamson explained her opinion on the presence and degree of specific Understanding and Memory capacities or limitations, finding that Plaintiff could "understand, remember and concentrate sufficiently . . . to carry out routine, simple tasks for a normal work period"; her narrative explanation of Plaintiff's Sustained Concentration and Persistence capabilities and limitations was that Plaintiff could "carry out short and simple instructions" and "make simple work related decisions." (R. 110.)

Third, a single State Agency psychological evaluator, Dr. Howard Tin, Psy.D., reviewed Plaintiff's DIB and SSI applications at the reconsideration level. He opined Plaintiff had mild limitations in two paragraph B criteria (understanding, remembering, or applying information; and adapting or managing oneself) and moderate limitations in two paragraph B criteria (interacting with others; and CPP). (R. 117, 127.) In the subsequent checklist portions of the evaluations, Dr. Tin found Plaintiff was not significantly limited in most areas but was moderately limited in

6

areas (1) and (2) of those in which Dr. Taylor found moderate limitations (above). (R. 119, 129.) Dr. Tin's relevant narrative form explanations parroted Dr. Williamson's. (R. 110, 119, 129.)

The ALJ in her decision only briefly addressed the state agency evaluators' opinions, finding them "largely persuasive, but [the paragraph B criteria of] interacting with others and adapting/managing are rated as moderate given [Plaintiff's] use of alcohol as a possible coping mechanism and irritability around others, and given Trilogy records reflecting some help managing activities of daily living."[3] (R. 26.) The ALJ added some additional justification for those findings (*id*.), but did not further address the evaluators' opinions, mentioning neither the checklist nor narrative sections of those opinions. The ALJ's relevant mental RFC—that Plaintiff "could perform "only simple, repetitive, and routine tasks and instructions"— varied slightly from Dr. Williamson's and Dr. Tin's narrative opinions that Plaintiff could perform "routine, simple tasks" (which differed substantially from Dr. Taylor's narrative opinion). (R. 20, 110, 119, 129.)

Although the Court remains mindful of the minimal articulation requirements for ALJs, *Warnell*, 97 F.4th at 1053, the ALJ did not connect her conclusions with the evidence regarding moderate CPP limitations in Plaintiff's abilities to "maintain attention and concentration for extended periods" (which all three State Agency evaluators found to be moderately limited) and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

---

[3] As noted above, for the paragraph B criteria, the ALJ found Plaintiff was mildly limited in understanding, remembering, or applying information, and moderately limited in the three areas of interacting with others; CPP; and adapting or managing oneself. (R. 19-20.) Notably, the ALJ lumped together all three evaluators' opinions as "largely persuasive," and her findings aligned with none of those opinions. As noted above, State Agency evaluators Drs. Taylor and Tin found Plaintiff had a mild limitation in understanding, remembering, or applying information, while Dr. Williamson found a moderate limitation there. In interacting with others, Dr. Williamson found Plaintiff had no limitation, while Dr. Taylor found a mild limitation, and Dr. Tin found a moderate limitation. All three, though, found Plaintiff was moderately limited in CPP, and mildly limited in adapting or managing oneself. The ALJ explains her decision that Plaintiff was moderately limited in the areas of interacting with others and adapting or managing herself, but did not address differences between the three evaluators' checklists and narratives.

7

periods" (which two of three State Agency evaluators found to be moderately limited). Neither of those moderate limitations was obviously "encapsulated and narrated" into the evaluators' related explanations that Plaintiff "can carry out short and simple instructions" and "make simple work related decisions."[4] (*See* R. 110, 119, 129.) In fact, those "explanations" merely reiterated the evaluators' stated checkbox opinions regarding areas in which they had found Plaintiff was *not* significantly limited—carrying out very short and simple instructions and making simple work-related decisions—without addressing her opined moderate limitations in the areas of maintaining attention and concentration for long periods, completing workdays and workweeks without interruption, and performing at a consistent pace without an unreasonable number and length of rest periods. *See Christine S.*, 2025 WL 1836085, at *4 (criticizing evaluator's narrative RFC explanation that "mostly considers issues where [claimant] was not limited . . . but does not provide any accommodation or discussion of the abilities where [the evaluator] found [claimant] was moderately limited"); *Morgan S.*, 2025 WL 1158558, at *2 (finding error where neither State Agency evaluator addressed "limitations in the narrative sections of their reports," which "addressed only two areas where the doctors agreed plaintiff had no limitations: the ability to execute simple instructions and the ability to make simple work-related decisions").

Although the Commissioner defends the ALJ's opinion on the ground that the ALJ never "state[d] that she was adopting [the State Agency evaluators'] opinions as her own," that argument

---

[4] The Court observes that Drs. Williamson and Tin, in the narrative explanations for the section on Understanding and Memory limitations, opined that Plaintiff "retains the mental capacity to understand, remember and concentrate sufficiently [] to carry out routine, simple tasks for a normal work period." (R. 110, 119, 129.) That language might be interpreted to address consistency, but it appears in the incorrect portion of the form and appears inconsistent with moderate limitations found in some areas of Sustained Concentration and Persistence in the next portion of the form. After all, all three evaluators opined Plaintiff was moderately limited in maintaining attention and concentration for extended periods, and two of the three opined Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. The ALJ must address and resolve this type of inconsistency. *See Christine S. v. Bisignano*, No. 22-cv-6297, 2025 WL 1836085, at *4 (N.D. Ill. July 3, 2025) (finding fault where narrative explanation inexplicably was inconsistent with checklist findings and ALJ did not address the checklist findings).


emphasizes the problem—the ALJ evaluated neither those opinions nor the evidence regarding limitations in those CPP areas. This leaves an unexplained gap between the CPP medical evidence and the ALJ's mental RFC, rendering the mental RFC unsupported by substantial evidence. *See Morgan S.*, 2025 WL 1158558, at *2 (holding "substantial evidence does not support the mental RFC determination" on similar facts); *Christine S.*, 2025 WL 1836085, at *4 (similar). "In sum, the ALJ's RFC determination failed to account for [P]laintiff's moderate limitation in [CPP]," and the decision therefore is reversed and remanded for further proceedings. *Maria R.*, 2022 WL 16553139, at *5.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 15) is granted. The Commissioner's motion (Dkt. 20) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: August 15, 2025

Hon. Keri L. Holleb Hotaling  
United States Magistrate Judge